Joshua D. Buck, CA Bar No. 258325
Leah L. Jones, CA Bar No. 276448
**THIERMAN BUCK LLP**
325 W. Liberty Street
Reno, Nevada 89501
Telephone: (775) 284-1500
josh@thiermanbuck.com
leah@thiermanbuck.com

Navid Kanani, Esq.
**JS ABRAMS LAW, PC**
20501 Ventura Blvd., Suite 165
Woodland Hills, California 91364
Telephone: (818) 330-4515
navid@jsafirm.com

Ryan F. Stephan, *pro hac vice*
rstephan@stephanzouras.com
Andrew C. Ficzko, *pro hac vice*
aficzko@stephanzouras.com
**STEPHAN ZOURAS, LLC**
222 West Adams Street, Suite 2020
Chicago, Illinois 60606
Phone: 312-233-1550

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE DORAN-SMITH and SIMONE BROOKS, individually, and on behalf of other members of the general public and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EIGHT ELEVEN GROUP, LLC d/b/a Medasource,<br><br>Defendant. | **Case No. 2:24-cv-00813-JFW-MAR**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**<br><br>Date: November 14, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. Cynthia Valenzuela<br>Location: Courtroom 10B |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 14, 2025, at 1:30 p.m., or as soon thereafter as may be heard in the United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 10B, the Honorable Cynthia Valenzuela presiding, Plaintiffs Nicole Doran-Smith and Simone Brooks ("Plaintiffs") will, and hereby do, move this Court to:

1.  Preliminarily approve the settlement set forth in the Settlement Agreement and Release ("Settlement"), attached hereto as Exhibit 1;

2.  Conditionally certify the proposed Settlement class;

3.  Conditionally certify the proposed FLSA collective;

4.  Appoint Nicole Doran-Smith and Simone Brooks as the representatives for the Settlement class and FLSA collective;

5.  Appoint Stephan Zouras, LLC, Thierman Buck, LLP, and JS Abrams Law, PC as Class Counsel;

6.  Approve distribution of the proposed Notice to the Class, Collective, and PAGA Members;

7.  Appoint Analytics Consulting, LLC, as the Settlement Administrator; and

8.  Set a hearing date for final approval of the Settlement.

This Motion is based upon: (1) this Notice of Motion; (2) the Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class, Collective, and Representative Settlement; (3) the Declaration of

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

Andrew C. Ficzko; (4) the Declaration of Leah L. Jones; (5) the Settlement Agreement and Release; (6) the Notice of Class, Collective, and Representative Action Settlement; (7) the [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of the Class, Collective, and Representative Action Settlement; (8) the records, pleadings, and papers filed in this Action; and (9) upon such other documentary and oral evidence or arguments as may be presented to the Court at or prior to the hearing on this Motion.

As this Motion is unopposed, the Parties respectfully request relief from the page limit requirement set by this Court's Standing Order.

Finally, as this Motion is unopposed and pursuant to L.R. 7-3, the Parties have met and conferred through e-mail throughout the process of drafting the Motion and all supporting exhibits.

Dated: October 13, 2025                    STEPHAN ZOURAS, LLC

_/s/ Andrew C. Ficzko_
Ryan F. Stephan
Andrew C. Ficzko

THIERMAN BUCK LLP

_/s/ Leah L. Jones_
Joshua D. Buck
Leah L. Jones

_Attorneys for Plaintiffs_

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...............................3

   A. Plaintiffs' Claims and Procedural Background. ...............................3

III. SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT 6

IV. THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 AND FLSA SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES ...........15

   A. The Standard for Settlement Approval of Collective and Class Actions.......16

   B. The Settlement is Fair, Adequate, and Reasonable and Should Be Preliminarily Approved. ................................................................18

     1. Plaintiffs and class counsel have adequately represented the class. ...........19

     2. The settlement was reached as a result of arm's-length negotiations between the parties. ...............................................21

     The settlement represents significant value to the class. ..........................23

     3. ...................................................................................................23

     4. The settlement treats all similarly-situated individuals equitably. .............33

V. THE SETTLEMENT CLASSES MEET ALL OF THE REQUIREMENTS OF CONDITIONAL CERTIFICATION AND RULE 23 34

   A. Conditional Certification Under the FLSA Has Been Satisfied. ...................34

   B. The Rule 23 Requirements Have Been Satisfied. ...........................36

     1. Rule 23(a)(1) – Numerosity ...............................................37

     2. Rule 23(a)(2) – Commonality ............................................38

     3. Rule 23(a)(3) – Typicality .................................................39

     4. Rule 23(a)(4) – Adequacy ..................................................39

     5. Rule 23(b) – Predominance and Superiority ..............................40

   C. The Settlement of the Claim for PAGA Civil Penalties Is Fair and Reasonable ........................................................................41

   D. The Proposed Notice Will Adequately Apprise the Class, Collective, and PAGA Member of Their Rights Under the Settlement. .....................43

VI. CONCLUSION ......................................................................................45

**TABLE OF AUTHORITIES**

**Cases**

*Altamirano v. Shaw Indu., Inc.,*
  2015 WL 4512372 (N.D. Cal. July 24, 2015)................................................33

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
  133 S. Ct. 1184 (2013) ..............................................................................15

*Barrentine v. Arkansas–Best Freight System, Inc.,*
  450 U.S. 728 (1981) ..................................................................................34

*Beck-Ellman v. Kaz USA, Inc.,*
  4013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ............................................16

*Boeing v. Van Gemert,*
  444 U.S. 472, 478 (1980) ............................................................................9

*Boyd v. Bank of Am. Corp.,*
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)..........................................34

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.,*
  2018 WL 6727825 (N.D. Cal. Dec. 21, 2018)..........................................36

*Campbell v. City of Los Angeles,*
  903 F.3d 1090 (9th Cir. 2018).....................................................................35

*Class Plaintiffs v. Seattle,*
  955 F.2d 1268 (9th Cir. 1992)...................................................................16

*Eisen v. Carlisle & Jacqueline,*
  417 U.S. 156 (1974)..................................................................................43

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  131 S. Ct. 2179 (2011) ..............................................................................15

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998).............................................................38, 40

*Hudson v. Libre Technology Inc.,*
  2019 WL 5963648 (S.D. Cal. Nov. 13, 2019) .........................................17

*In re Cooper Cos. Sec. Litig.,*
  254 F.R.D 628 (C.D. Cal. 2009) ..............................................................37

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995)........................................................................21

*In re Heritage Bond Litig.,*
  2005 WL 1594403 (C.D. Cal. 2005).........................................................21

*In re Heritage Bond Litigation,*
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................16

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

*In re M.L. Stern Overtime Litig.*,
2009 WL 995864 (S.D. Cal., Apr. 13, 2009) ...................................................17

*In re Mercury Interactive Corp. Securities Litigation*,
618 F.3d 988 (9th Cir. 2010) ...........................................................................9

*In re Newbridge Networks Sec. Litig.*,
1998 WL 765724 (D.D.C. 1998) ....................................................................27

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) ...................................................................39

*In re Taco Bell Wage & Hour Actions*,
2012 WL 5932833 (E.D. Cal. Nov. 27, 2012) ................................................37

*In re Uber FCRA Litig.*,
2017 WL 2806698 (N.D. Cal. June 29, 2017) ................................................42

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ...........................................................................18

*Kamar v. Radio Shack Corp.*,
254 F.R.D. 387 (C.D. Cal. 2008) ...................................................................37

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .....................................................8

*Leverage v. Traeger Pellet Grills, LLC*,
2017 WL 2797811 (N.D. Cal. 2017)................................................................27

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013)...........................................................................37

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)........................................................................28

*Misra v. Decision One Mortg. Co.*,
2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ................................................28

*Murillo v. Pac. Gas & Elec. Co.*,
226 F.R.D. 468 (E.D. Cal. 2010) ...................................................................17

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1982)....................................................................18, 22

*Pederson v. Airport Terminal Servs.*,
2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) ..................................................22

*Powers v. Eichen*,
229 F. 3d 1249 (9th Cir. 2000)...................................................................8, 32

*Ramirez v. Benito Valley Farms, LLC*,
2017 WL 3670794 (N.D. Cal. Aug. 25, 2017)................................................41

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT

*Rodriguez v. West Publishing Corp.,*
   563 F.3d 948 (9th Cir. 2009)...................................................................................22

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003)...........................................................................17, 39

*Thurman v. Bayshore Transit Mgmt., Inc.,*
   203 Cal. App. 4th 1112 (2012)...............................................................................42

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016) ...........................................................................................40

*Wershba v. Apple Computer, Inc.,*

   91 Cal.App.4th 224 (2001)......................................................................................28

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996)..................................................................................41

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002)..................................................................................9

*Vizcaino v. U.S. Court for W. Dist. of Wash.,*
   173 F.3d 713 (9th Cir. 1999)..................................................................................38

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") ........................passim

California Labor Code ........................................................................................passim

Fed. R. Civ. P. 23(a)(2).....................................................................................passim

**Other Authorities**

4 Newberg Class Actions § 13:53 (5th ed.).............................................................31

*Manual for Complex Litigation* (Fourth).................................................................15

*Manual for Complex Litigation*, (Third) .................................................................44

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

# I.    __INTRODUCTION__

Plaintiffs Nicole Doran-Smith and Simone Brooks (collectively, "Plaintiffs") respectfully seek preliminary approval of a non-reversionary $325,000.00 class, collective, and representative action settlement on behalf of themselves and all other similarly-situated individuals who worked for Defendant Eight Eleven Group, LLC d/b/a Medasource ("Defendant" or "Medasource") during the relevant time period.

Medasource is a healthcare information technology company that provides training and support to healthcare facilities throughout the country in connection with the implementation and administration of integrated health computer systems, specifically, new electronic recordkeeping systems. Medasource employs workers, often referred to as "Credential Trainers" or Trainers", to perform such training and support services to the respective healthcare units.

Plaintiffs worked for Medasource as Trainers at various times and in various states throughout the country. All Trainers, including Plaintiffs, were classified by Medasource as non-exempt employees. Plaintiffs allege that they, along with all other similarly-situated Trainers, were employed by Medasource to assist hospitals and healthcare organizations learn and navigate a new integrated health computer system but Medasource failed to pay them for all hours worked, including overtime pay, despite it purportedly requiring, permitting, and encouraging them to work overtime hours. Plaintiffs, therefore, filed a class, collective, and representative action alleging claims for violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA") and the California Labor Code for unpaid wages, including overtime compensation, meal and rest period violations, wage statement and waiting time penalties, violation of the Unfair Competition Law, and for penalties under the California Private Attorneys' General Act ("PAGA"). (Dkt. 1.)

The proposed settlement is an excellent result for the Class, Collective, and PAGA Members (as defined herein and in the Settlement Agreement and Release[1] ("Settlement Agreement" or "Settlement")) and was reached after investigation by the Parties, including a thorough analysis and review of Medasource's employment policies as well as its time and payroll records, and a full-day private mediation with Michael J. Loeb, an experienced mediator well-versed in wage and hour class and collective actions. The Settlement is strongly supported by experienced counsel, who carefully considered the strength of the claims and Medasource's potential defenses, as well as the expense, complexity, risks, and likely duration of continued litigation. In light of the Parties' support for the Settlement, and because it satisfies all criteria for preliminary settlement approval under California, New York, South Carolina, and Tennessee law, relevant federal authority, and will provide significant monetary recovery to the Class, Collective, and PAGA Members, preliminary approval of the Settlement is appropriate and should be granted.

---

[1] Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined in the Settlement Agreement, attached as Exhibit 1.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Claims and Procedural Background.

On January 30, 2024, Plaintiffs filed a Class, Collective, and Representative Action Complaint ("Complaint") in the United States District Court for the Central District of California, entitled *Nicole Doran-Smith and Simone Brooks v. Eight Eleven Group, LLC d/b/a Medasource and Does 1 through 100*, Case No. 2:24-cv-00813-JFW-MAR alleging violations of the FLSA and California state law. (Dkt. 1.) Plaintiffs allege that they, along with all other similarly situated Trainers, were employed by Medasource to assist hospitals and healthcare organizations learn and navigate a new integrated healthcare computer system but they were not paid for all hours worked, including overtime pay, despite Medasource requiring, permitting, and encouraging them to work overtime hours. (*Id.*) Plaintiffs further allege Medasource required its Trainers to work through their rest and meal periods or required them to wait extended periods of time before taking a meal break. (*Id.*) Finally, Plaintiffs allege Medasource provided incomplete and inaccurate wage statements by deducting time for rest and meal periods its Trainers worked. (*Id.*) Therefore, Plaintiffs asserted causes of action for violations of the FLSA, California Labor Code §§ 510 and 1198 (Unpaid Overtime Wages), California Labor Code, §§ 226.7, 512(a), and 1198 (Meal Period Violations), California Labor Code §§ 226.7 and 1198 (Failure to Provide Rest Periods), California Labor Code §§ 226(a), 1174(d), and

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

1198 (Failure to Provide Accurate Wage Statements), California Labor Code §§ 201, 202, and 203 (Wages Not Timely Paid), the Private Attorney Generals Act, and California Business and Professions Code § 17200 *et seq.* (*Id.*)

Medasource employed Plaintiff Nicole Doran-Smith ("Doran-Smith") as a Trainer from approximately March 4, 2020, through March 22, 2020, in Tennessee. Medasource employed Doran-Smith as a Trainer from January 11, 2021, through January 2, 2022, and then from June 1, 2022, through July 17, 2022, in New York. Medasource employed Doran-Smith from November 6, 2022, through November 13, 2022, in South Carolina. Finally, Medasource employed Doran-Smith from June 5, 2023, through August 16, 2023, in California.

Medasource employed Plaintiff Simone Brooks ("Brooks") as a Trainer from approximately March 4, 2020, through April 24, 2020, in Tennessee. Medasource also employed Brooks from June 6, 2023, through August 27, 2023, in California.

On May 3, 2024, Medasource filed its Answer, denied the allegations in the lawsuit, and contended that at all times, it complied with all applicable wage and hour laws. (Dkt. 34.) Thereafter, the Parties exchanged written discovery, including the production of extensive payroll data, that informed the Parties' respective analyses of potential liability in the event the Plaintiffs were to prevail on the merits of their claims. After conducting independent investigation of the allegations, the Parties agreed to engage in settlement negotiations and agreed to attempt to resolve Plaintiffs' claims through private mediation. (*See* Declaration of Andrew C. Ficzko

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT

("Ficzko Decl."), ¶ 12, attached as Exhibit 2.) On December 18, 2024, the Parties

participated in a private mediation with mediator Michael J. Loeb. (*Id.*) Although the

Parties were unable to reach an agreement at that time, the Parties, along with the

assistance of the mediator, continued to negotiate a possible resolution. (*Id.*) As a

result of their substantial efforts and good-faith, arm's-length negotiations with the

assistance of the mediator, the Parties subsequently reached an agreement in principle

to resolve the case on a class, collective, and representative basis, and executed a

Memorandum of Understanding ("MOU") on April 11, 2025. (*Id.*) Finally, as part of

the settlement, on August 29, 2025, Plaintiffs filed a First Amended Class, Collective,

and Representative Action Complaint ("FAC") and added New York, South

Carolina, and Tennessee subclasses and corresponding claims under the laws of those

states. (Dkt. 64.)

        In sum, the Parties engaged in extensive negotiations conduced at arms-length

and free from collusion, by experienced class and collective action attorneys. (Ficzko

Decl., ¶ 17.) In order to reach the final Settlement, the Parties discussed and resolved

many difficult legal and factual issues, in some cases with little or no governing law

to guide them. During this process, both sides were required to make reasonable

compromises in light of the facts, issues, and risks presented. Specifically, Plaintiffs'

Counsel considered the uncertainty and risks of litigation and the difficulties inherent

therein. Plaintiffs' Counsel also considered the burdens of proof necessary to

establish and maintain class and collective certification and then to establish liability

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

against Medasource and to defeat all of the defenses Medasource intends to raise. All of these factors indicated that the best interest of the Class, Collective, and Representative Members would be best served by the settlement of this Action in the manner and upon the terms set forth in the Parties' Settlement Agreement, attached hereto as Exhibit 1.

### III.  SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT

The terms of the settlement are set forth in the Settlement Agreement. The settlement proposes to resolve the Action on a class, collective, and representative basis. *Id*. The principal terms are as follows:

**Settlement Amount:** Medasource agreed to pay the Gross Settlement Amount of $325,000.00, which shall include the Administrative Expenses estimated not to exceed $22,000.00; Class Counsel's award of attorneys' fees of $81,250.00; Class Counsel's reasonably incurred litigation costs not to exceed $18,000.00; a Service Award of $5,000.00 to each of the Named Plaintiffs for a total of $10,000.00; PAGA Payment of $20,000.00; and Individual Settlement Payments. (Settlement Agreement, pp. 27-29, ¶¶ 1-3.) In addition to the Gross Settlement Amount, Medasource agreed to pay the employer's portion of payroll taxes, including FICA and FUTA, on the portion of each Individual Settlement Payment allocated as unpaid wages. (*Id.*, p. 27, ¶ 1.)

**Scope of the Settlement Class and Collective:** Participating Class Members is comprised of the approximately 711 individuals who worked for Medasource providing training to Medasource's clients in California, New York, Tennessee, and South Carolina from January 30, 2020, through Preliminary Approval, and who do not timely request to be excluded from the settlement class. (Settlement Agreement, p. 5, ¶ 4; p. 10, ¶ 31.) Participating Collective Members is comprised of the approximately 1,294 individuals who worked for Medasource providing training to Medasource's clients nationwide from July 2, 2021, through Preliminary Approval, and who cash their FLSA payment check and thereby consent under the FLSA to opt in to the Action and release their Participating Collective Members' Released Claims. (*Id.,* p. 5, ¶ 7; p. 11, ¶ 33.)

**Settlement Administration:** Analytics Consulting LLC (the "Settlement Administrator") will be responsible for such things as the establishment of the escrow account for the Gross Settlement Amount; providing Notice to the Class, Collective, and PAGA Members; handling the CAFA Notices; undertaking address verification measures including utilization of normal skip tracing procedures as well as searching the USPS national change of address database; communicating with Class and Collective Members; disbursing payments to Participating Class, Collective, and PAGA Members; and tax reporting, among other administrative duties. (Settlement Agreement, p. 24, ¶ 9.) The total Administrative Expenses will not exceed $22,000.00. (*Id.*, p. 28, ¶ 3(c).

**Service Awards:** Subject to Court approval, Medasource agreed to pay a Service Award to each of the Named Plaintiffs from the Gross Settlement Amount for consideration of their efforts in the Action and a general release of their individual claims, known or unknown, pursuant to Civil Code § 1542. (Settlement Agreement, p. 27-28, ¶ 3(b).) Plaintiffs will petition the Court for a Service Award in the amount of $5,000.00 to each of them in addition to their respective settlement award checks. (*Id.*) Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded shall be included in the Net Settlement Amount. (*Id.*)

**Attorneys' Fees and Costs:** Subject to Court approval, Class Counsel seek an attorneys' fee award not to exceed $81,250.00, representing one-quarter, or 25%, of the Gross Settlement Amount, for work to date and for work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly administered, and obtaining dismissal of the Action. (Settlement Agreement, p. 29, ¶ 3(e).) Class Counsel also seek reimbursement of out-of-pocket litigation expenses not to exceed $18,000.00 from the Gross Settlement Amount. (*Id*.) In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund recovery is 20 to 33.3 percent, with 25% considered the benchmark. *Powers v. Eichen*, 229 F. 3d 1249, 1256 (9th Cir. 2000). "[I]n most common fund cases, the award exceeds [the] benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009).

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. In class and collective litigation, many individuals benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980). The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation produces a common fund. *See e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Plaintiffs will provide detailed briefing on their request for attorneys' fees and costs in a separate motion. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Given that Class Counsel seek a fee award commonly awarded in state and federal courts, Plaintiffs respectfully request the Court defer a detailed attorneys' fee analysis until the motion for attorneys' fees is filed. This is appropriate since the factors considered in assessing whether the fee award is fair and reasonable partially depends on individuals' reaction to the notice of settlement.

**PAGA Payment:** The amount of $20,000.00 will be paid from the Gross Settlement Amount and will be allocated to the settlement of claims for civil penalties under PAGA. The PAGA Payment will be distributed in accordance with PAGA so

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT

that 75% is paid to the California Labor and Workforce Development Agency and the remaining 25% will be distributed to the PAGA Members on a *pro rata* basis based on the pay period of January 30, 2023, through Preliminary Approval that each PAGA Member worked for Medasource in California. (Settlement Agreement, p. 29, ¶ 3(d).)  All Individual PAGA Payments will be allocated as 100% penalties for which a 1099 will be issued, if required by law. (*Id.*)

**Settlement Allocation:** The Net Settlement Amount[2] will be divided into two funds for distribution to the Participating Class and Collective Members (*i.e.,* the "Class Fund" and the "FLSA Fund" respectively). (Settlement Agreement, p. 31, ¶ 1.) The Class Fund will be 80% of the Net Settlement Amount and the FLSA Fund will be 20% of the Net Settlement Amount. (*Id.*)

Allocation of the Class Fund to Participating Class Members will be calculated on a *pro rata* basis based on the workweeks that each Participating Class Member worked for Medasource from January 30, 2020, through Preliminary Approval. (*Id.*, p. 31-32, ¶ 2.) Individual Class Settlement Payments will be calculated using the following formula: Individual Class Settlement Payment = individual Eligible Workweeks ÷ all Participating Class Member Eligible Workweeks × Class Fund.

---

[2] Net Settlement Amount means the Gross Settlement Amount less: (1) a Service Award to each of the Named Plaintiffs, (2) the Fee Award, (3) Administrative Expenses, and (4) PAGA Payment. (Settlement Agreement, p. 9, ¶ 25.)

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT

There is no need for a Class Member to submit a claim form in order to be eligible for and to receive a payment.[3] (*Id.*)

Allocation of the FLSA Fund to Participating Collective Members will be calculated on a *pro rata* basis based on the workweeks that each Participating Collective Member worked for Medasource from July 2, 2021, through Preliminary Approval. (Settlement Agreement, p. 32, ¶ 3.) Individual FLSA Settlement Payments will be calculated using the following formula: Individual FLSA Settlement Payment = individual Eligible Workweeks ÷ all Collective Member Eligible Workweeks × FLSA Fund. (*Id.*) There is no need for a Collective Member who wants to participate in the collective settlement to submit a claim form in order to eligible for and to receive an Individual FLSA Settlement Payment.[4] (*Id.*)

Participating Class and Collective Members are provided an opportunity to challenge any disputes regarding the number of workweeks that they worked for Medasource during the relevant respective periods of time (*i.e.,* "Eligible Workweeks") and PAGA Members may also dispute the pay periods that they worked for Medasource in California from January 30, 2023, through Preliminary

---

[3] To determine each Settlement Class Member's estimated "Individual Class Settlement Payment" to be included in the Notice, the Settlement Administrator will use the following formula: estimated Individual Class Settlement Payment = individual Eligible Workweeks ÷ all Class Member Eligible Workweeks × estimated Class Fund. (Settlement Agreement, p. 32, ¶ 2.)

[4] To determine each Collective Member's estimated "Individual FLSA Settlement Payment" to be included in the Notice, the Settlement Administrator will use the following formula: estimated Individual FLSA Settlement Payment = individual Eligible Workweeks ÷ all Collective Member Eligible Workweeks × estimated FLSA Fund. (Settlement Agreement, pp. 32-33, ¶ 3.)

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

Approval (*i.e.,* "Eligible Pay Periods") if they believe they worked more than stated on their Notice. (*Id.,* p. 23, ¶ 6.) Participating Class, Collective, and PAGA Members may do this by submitting information to the Settlement Administrator in writing no later than 45 days after the Settlement Administrator mails the Notice to them. (*Id.*) The Settlement Administrator will work with Class Counsel and Medasource's Counsel to resolve the dispute in good faith. (*Id.*) If the Parties cannot agree on a resolution, the Court shall make the final decision based on the information presented by the individual and the Parties. (*Id.*)

The settlement allocation for the PAGA Payment was the result of simple negotiations regarding the strengths and weaknesses of this particular PAGA claim and the Parties arrived at the allocation of $20,000.00 as the total settlement amount for this claim following settlement negotiations. (Settlement Agreement, p. 28, ¶ 3(d).) The settlement allocation for the Participating Class and Collective Members was based on the respective value of each of the claims according to the Parties' damages analysis. No Class or Collective Member is being given any kind of preferential treatment as the values of the claims for the Participating Class and Collective Members are based on the proportional values of the claims. For example, the amount available for the Participating Class Members is much greater than the amount available to the Participating Collective Members because the overall value of the Participating Class Members' claims exceeds the value of the claims brought on behalf of the Participating Collective Members as explained herein. No

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

preferential treatment is being given to the two Named Plaintiffs due to these allocations as they are both a Class and Collective Member.

The $20,000.00 PAGA Payment will be paid from the Gross Settlement Amount and will be allocated to the settlement of claims for civil penalties under PAGA. The PAGA Payment will be distributed in accordance with PAGA so that 75% is paid to the California Labor and Workforce Development Agency and the remaining 25% will be distributed to the PAGA Members on a *pro rata* basis. (Settlement Agreement, p. 28, ¶ 3(d).)

**Non-Reversionary Settlement:** Settlement checks sent to Participating Class, Collective, and PAGA Members will remain valid and negotiable for 180 days from the date of their issuance and will thereafter automatically be canceled if not cashed within that period of time. (Settlement Agreement, pp. 30-31, ¶ 5.) The Settlement Administrator will include language on all settlement checks stating the checks are void 180 days following their issuance. (*Id*.) After the 180-day check cashing period, any uncashed settlement checks for Participating Class Members and Individual PAGA Payment checks for PAGA Members will be tendered to the unclaimed property fund in the state of the last known mailing address for the individual. (Settlement Agreement, p. 31, ¶ 6.) Any uncashed settlement checks for any Collective Member after the 180-day check cashing period will be voided and the amount will be transferred to the mutually agreeable *cy pres* Legal Aid at Work, upon approval by the Court. (*Id*.) The Settlement Administrator will send a reminder

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

postcard and email (if available) to anyone who has not cashed their settlement check after 60, 120, and 160 days upon issuance. (*Id*.) In no event will any amount paid by Medasource into the Qualified Settlement Fund, or any interest earned thereon, shall revert to Medasource or any other Released Party. (*Id*.)

**Releases:** In exchange for the consideration described herein and in the Settlement Agreement, Named Plaintiffs and all Participating Class, Collective, and PAGA Members agree to the release of claims as set forth in the Settlement Agreement. In exchange for the Service Awards, each Named Plaintiff, only, will provide Medasource and the other Released Parties with a general release of their individual claims, known or unknown, pursuant to California Civil Code § 1542. (Settlement Agreement, p. 27-28, ¶ 3(b).)

Next, with the exception of the two Named Plaintiffs, only those Collective Members who cash or deposit their FLSA payment checks shall release their FLSA claims, including claims for alleged unpaid wages which incorporates causes of action related to the payment of overtime and the classification of workers. (Settlement Agreement, pp. 14–15, ¶¶ 2.) The Named Plaintiffs will be deemed to have released their FLSA and state law claims by virtue of having executed the Settlement Agreement. (*Id*.) The Settlement Administrator will include the release language on the back of each Collective Member's Settlement check as fully detailed in the Settlement Agreement. (*Id*., pp. 15-16, ¶ 5.)

Finally, as of the Effective Date, all Participating Class Members (*i.e.,* individuals who do not timely request to be excluded from the settlement class), will release all federal, state, and local law claims and causes of action based on the facts alleged in the FAC for alleged unpaid wages, overtime, state wage and hour claims, and related state law damages and/or penalties, including causes of action for: (1) failure to pay all wages including overtime wages; (2) meal period violations; (3) rest break violations; (4) failure to timely pay final wages at termination; (5) failure to provide accurate itemized wage statements; (6) unfair business practices based on the same alleged wage and hour violations; and (7) all claims for interest, penalties, attorneys' fees, costs and any other monetary relief based upon the claims described above and including, but not limited to, pursuant to any California Wage Orders, California Labor Code §§ 210, 218.5, 218.6, Code of Civil Procedure §1021.5, or any similar NY, SC, or TN state statutes. (Settlement Agreement, pp. 10–11, ¶ 32.)

## IV.    THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 AND FLSA SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES

The purpose of provisional class certification is to facilitate distribution of notice of terms of a proposed settlement and the date and time of the final approval hearing to all plaintiffs. *See Manual for Complex Litigation* (Fourth) §§ 21.632-33 (2008). In the context of granting preliminary approval of the settlement, the court must make a threshold determination as to whether the proposed settlement class meets the requirements of Rule 23 by a preponderance of the evidence. *See Erica P.*

*John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2183 (2011). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* 133 S. Ct. 1184, 1195 (2013) (internal quotations omitted). The standard for certification of a settlement class is more lenient than the standard for certification for the purposes of litigation. Because the standards for final FLSA certification and Rule 23 class certification are similar, the analysis set out below supports the class and collective treatment of Plaintiffs' claims for settlement purposes.

### A. The Standard for Settlement Approval of Collective and Class Actions.

Rule 23(e) requires judicial approval of all proposed class action settlements. Fed. R. Civ. P. 23(e). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). "Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled." *Beck-Ellman v. Kaz USA, Inc*., 2013 WL 1748729 at *5 (S.D. Cal. Jan. 7, 2013). Once preliminary approval is granted, class members are notified of the settlement and their legal rights, and the court and parties proceed to the second step: the final fairness determination. *Id*.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

The Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation,* 2005 WL 1594403 (C.D. Cal. June 10, 2005), citing *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). If the parties, however, reach a settlement before class certification, "the court must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Hudson v. Libre Technology Inc.,* 2019 WL 5963648, at *3 (S.D. Cal. Nov. 13, 2019) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003)). A majority of courts have determined a hybrid Rule 23 and FLSA action is proper. *Murillo v. Pac. Gas & Elec. Co.,* 226 F.R.D. 468, 472 (E.D. Cal. 2010).

The preliminary approval process is twofold: First, in determining whether preliminary approval is warranted, the issue is whether the proposed settlement is within the range of what might in a broad sense be found to be fair, reasonable, and adequate such that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement approval. *In re M.L. Stern Overtime Litig.*, 2009 WL 995864 at *3 (S.D. Cal., Apr. 13, 2009); Fed. R. Civ. P. 23(e)(2). Second, the court must then decide if the settlement class(es) meet the requirements for conditional certification and class certification under Rule 23. *Murillo,* 226 F.R.D. at 472. The proposed Settlement is a fair, reasonable, and adequate resolution of the claims asserted as it will provide significant monetary

relief to Participating Class, Collective, and PAGA Members and should be preliminarily approved.

### B. The Settlement is Fair, Adequate, and Reasonable and Should Be Preliminarily Approved.

"If the propos[ed] [settlement] would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the following factors:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's-length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;
(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)   any agreement required to be identified under Rule 23(e)(3);

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

The "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* 895 F.3d 597, 611 (9th Cir. 2018). This Court's primary function is to determine that the Settlement is not the product of fraud or overreaching by, or collusion between, the

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).

### 1. *Plaintiffs and class counsel have adequately represented the class.*

The Named Plaintiffs have diligently represented the Class, Collective, and PAGA Members. (*See* Ficzko Decl., ¶ 16.) Plaintiffs have been involved in nearly every aspect of this case, including by helping their attorneys investigate their wage and hour claims, conferring with counsel throughout the litigation, responding to written discovery, actively participating in the mediation, and reviewing and approving the Settlement Agreement before signing it. (*Id.*) Without the Plaintiffs stepping up to represent the Class, Collective, and PAGA Members and taking on these tasks, the relief secured wouldn't have been possible. (*Id.*) Given their efforts and aligned interest with the Class, Collective, and PAGA Members, there can be no doubt that the Plaintiffs have only acted in their best interest and have adequately represented them here.

Next, Plaintiffs have retained counsel with significant experience and success in prosecuting class and collective actions. (*See* Ficzko Decl., ¶ 6.) Stephan Zouras, LLC, is a premier plaintiffs-side employment and class action firm whose founders and partners have been consistently recognized as Illinois "Super Lawyers."[5] (*Id.,* ¶

---

[5]    *See*    https:    //profiles.superlawyers.com/illinois/chicago/lawyer/ryan-f-stephan/3d2e4b09-091f-49d4-ad86-05d26528287a.html,

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

7.) For over 18 years, Stephan Zouras, LLC, has litigated almost exclusively on behalf of employees in class and collective action litigation across the United States and have been deemed adequate class counsel in scores of employment cases. (*Id.,* ¶ 6.) Stephan Zouras, LLC, has recovered over $250 million for individuals nationwide and has successfully prosecuted hundreds of class and collective actions in state and federal courts. (*Id.*)

Similarly, Thierman Buck, LLP also has significant experience and success in prosecuting class and collective actions, including multi-state wage and hour matters. (*See* Declaration of Leah L. Jones ("Jones Decl."), ¶ 5, attached as <u>Exhibit 3</u>.) For at least the last twelve years, Thierman Buck, LLP has worked almost exclusively on employment matters, including being actively involved as counsel of record and the lead or co-lead counsel in wage and hour matters in both California and Nevada. (*Id.*)

Here, Plaintiffs' Counsel have vigorously prosecuted the Action, having filed multiple complaints to preserve and maximize the claims of the Class, Collective, and PAGA Members, obtaining substantial informal discovery, propounding and responding to formal discovery, preparing a comprehensive mediation brief, attending a full-day mediation, negotiating both a MOU and a long-form settlement agreement, retaining a settlement administrator, and preparing and finalizing this Motion and supporting documents. (*See* Ficzko Decl.*,* ¶ 9; Jones Decl., ¶ 6.) This

---

https://profiles.superlawyers.com/illinois/chicago/lawyer/andrew-ficzko/5838a1d0-62cb-4a45-b0cd-1637db0cda6a.html.

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

does not include the time they will have to expend working with the Settlement Administrator on issuing the notices and fielding inquiries from Class and Collective Members. Plaintiffs' Counsel have also advanced litigation expenses on behalf of the Class, Collective, and PAGA Members, with no assurance that those expenses would be reimbursed. (Ficzko Decl., ¶ 8; Jones Decl., ¶ 9.) Therefore, for purposes of certifying a settlement class, Plaintiffs, and their counsel, meet the adequacy requirement.

### 2. The settlement was reached as a result of arm's-length negotiations between the parties.

The Settlement was reached as a result of the extensive arm's-length negotiations between the Parties and facilitated by an experienced mediator, Michael Loeb. "A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, 2005 WL 1594403 at *9 (C.D. Cal. 2005). Moreover, if the terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

Plaintiffs have actively litigated this case for almost two years and the Settlement was negotiated after the disclosure of data necessary to enable the Plaintiffs to develop a damages model which approximated the value of the Class and Collective Members' claims. (Ficzko Decl., ¶¶ 9, 12, 17.) Additionally, the Parties

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

engaged an experienced and respected mediator, Michael Loeb, who has significant experience in employment class and collective litigation, in an attempt to broker a settlement. (*Id*. ¶ 12.) Although unable to reach an agreement during the actual mediation, the Parties continued to negotiate a possible resolution thereafter. (*Id.*) As a result of the Parties' extensive negotiations and with the assistance of the mediator, their efforts culminated in an agreement to resolve this matter in principle on April 11, 2025. (*Id.*) The Parties then spent the next several months drafting and negotiating the finer deal points of the final Settlement Agreement before fully executing it on October 13, 2025. (*Id.*) As the Ninth Circuit has held, courts should defer to the "private consensual decision of the [settling] Parties." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) (citation omitted). Favoring deferral to settlements are such factors as the experience of counsel and the participation of an experienced mediator:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.

*Id.* at 965 (quoting *Officers of Justice,* 688 F.2d at 625). "The involvement of a neutral or … facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee's Nots; *accord Pederson*

*v. Airport Terminal Servs.,* 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (finding the oversight "of an experienced mediator" reflected non-collusive negotiations). The involvement of a mediator, as well as the lengthy and adversarial nature of the settlement negotiations, are all indicia of the contentious nature of the underlying negotiations and confirm the proposed Settlement is the product of arm's-length negotiations.

### 3. The settlement represents significant value to the class.

The third factor the Court needs to consider is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes; *In re Volkswagen*, 895 F.3d at 611.

i.    **The settlement provides significant relief to class and collective members.**

The relief to be provided to the Participating Class, Collective, and PAGA Members is significant. Medasource agreed to pay a Gross Settlement Amount of $325,000.00 to settle its alleged violations as set forth in the operative FAC. This Settlement provides substantial and immediate benefits to the Participating Class, Collective, and PAGA Members, and readily satisfies the Rule 23 standard of being

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

fair, reasonable, and adequate, especially when measured against the risks of further litigation.

At the final approval stage, Plaintiffs' Counsel will petition the Court to award Plaintiffs Nicole Doran-Smith and Simone Brooks Service Awards in the amount of $5,000.00 each, for a total of $10,000.00 for the work and risks they incurred in prosecuting this Action. At the final approval stage, Plaintiffs' Counsel will also petition the Court to approve attorneys' fees in the amount of $81,250.00 (or 25% of the Gross Settlement Amount) for the substantial work and risks they undertook prosecuting this Action on a contingency basis and will seek reimbursement of their actual out-of-pocket litigation expenses not to exceed $18,000.00. Analytics Consulting, LLC, was selected as Settlement Administrator to administer the Settlement and, at the final approval stage, Plaintiffs' Counsel will petition the Court to reimburse the Settlement Administrator for its services in an amount not to exceed $22,000.00. The Parties also agreed to allocate $20,000.00 from the Gross Settlement Amount towards the PAGA Payment (75% of which will be paid to the CA Labor and Workforce Development Agency and 25% will be distributed to the PAGA Members) and Plaintiffs' Counsel will petition the Court to approve this amount.

After the Named Plaintiffs' Service Awards ($10,000), attorneys' fees and costs ($99,250), costs of settlement administration ($22,000), and payments to the PAGA Members and the CA Labor and Workforce Development Agency ($20,000) have been deducted from the Gross Settlement Amount, the remaining amount of

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

$173,750.00 will be divided as follows: $139,000.00 will be allocated to the Class Fund and $34,750.00 will be allocated to the FLSA Fund. (Settlement Agreement, p. 31, ¶ 1.)

The Parties further agree the Net Settlement Amount be distributed as follows:

**Participating Class Members:** Allocation of the Class Fund to Participating Class Members will be calculated on a *pro rata* basis based on the workweeks that each Participating Class Member worked for Medasource from January 30, 2020, through Preliminary Approval. (*Id.*, p. 31-32, ¶ 2.) Individual Class Settlement Payments will be calculated using the following formula: Individual Class Settlement Payment = individual Eligible Workweeks ÷ all Participating Class Member Eligible Workweeks × Class Fund. There is no need for a Class Member to submit a claim form in order to be eligible for and to receive a payment. (*Id.*)

**Participating Collective Members:** Allocation of the FLSA Fund to Participating Collective Members will be calculated on a *pro rata* basis based on the workweeks that each Participating Collective Member worked for Medasource from July 2, 2021, through Preliminary Approval. (Settlement Agreement, p. 32, ¶ 3.) Individual FLSA Settlement Payments will be calculated using the following formula: Individual FLSA Settlement Payment = individual Eligible Workweeks ÷ all Collective Member Eligible Workweeks × FLSA Fund. (*Id.*) There is no need for a Collective Member who wants to participate in the collective settlement to submit

a claim form in order to be eligible for and to receive an Individual FLSA Settlement Payment. (*Id.*)

All Settlement payment determinations are based on Medasource's payroll and timekeeping records. (Settlement Agreement, p. 33, ¶ 4.) If the Parties determine that a person identified as being a Class or Collective Member is not a Class or Collective Member, based on the available data, or if an individual who was not previously identified as a Class or Collective Member is in fact a Class or Collective Member, the Settlement Administrator will promptly make such addition or deletion as appropriate. (*Id.*)

All Individual Settlement Payments will be allocated as follows: 33% of each Individual Settlement Payment reflects a compromise of claims for alleged unpaid wages and the remaining 67% reflects compromise of claims for interest and penalties. (Settlement Agreement, p. 33, ¶ 5.) The portion of each Individual Settlement Payment attributed to unpaid wages will be subject to regular and applicable payroll and income tax withholdings (for the employee portion only), and will be reported on an IRS Form W-2 to the extent required by law. (*Id.*) The Settlement Administrator will make appropriate tax withholdings from the portion of each Individual Settlement Payment designated as unpaid wages, and will pay the employer portion of payroll taxes with funds separate from the Gross Settlement Amount to be furnished by Medasource. (*Id.*) Participating Class and Collective Members will be responsible for paying all other taxes due on their Individual

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

Settlement Payments. (*Id*.) The Settlement Administrator will not make any other deductions, withholdings, or additional payments, other than what has been set forth above, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments to the extent permitted by law, or charity withholdings, from or with respect to the Individual Settlement Payments, and entry of the final approval order by the Court shall be deemed authority not to make any such deductions, withholdings, or additional payments. (*Id*.)

The valuation of the outstanding claims, and the ultimate Settlement, was informed by Medasource's time and payroll records as well as conferring with the Named Plaintiffs. (Ficzko Decl., ¶ 9.) Plaintiffs projected that the total unpaid wage damages to be approximately $1,140,000.00, if Plaintiffs were successful at trial. (*Id.,* ¶ 10.) Accordingly, the Settlement Fund represents approximately 28% of the full verdict value of the claims being released. (*Id.*) This is well within the bounds of reasonableness. *See, e.g., Leverage v. Traeger Pellet Grills, LLC*, 2017 WL 2797811, at *7 (N.D. Cal. 2017) (Approving a California wage and hour settlement where the class received 18% of the estimated total liability); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. 1998) ("Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the

risk that no recovery at all will be won, seems to be within the targeted range of reasonableness.").

### ii.    Continued litigation could entail substantial cost, risk, delay, and potential appeals.

"Almost all class actions involve high levels of cost, risk, and time, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1238 (9th Cir. 1998) "It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case.'" *Misra v. Decision One Mortg. Co.*, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009) (citations omitted). "A[] central concern [when evaluating a proposed class action settlement] … relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee's Notes. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved had plaintiffs prevailed at trial." *Wershba v. Apple Computer, Inc.,* 91 Cal.App.4th 224, 246 (2001) (citing *Linney,* 151 F.3d at 1242). Instead, "the test is … whether the settlement is reasonable under all of the circumstances." *Id.* at 250. The Court further held, "[a] settlement need not obtain 100 percent of the damages

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

sought in order to be fair and reasonable. [Citations omitted] … Compromise is

inherent and necessary in the settlement process. Thus, even if 'the relief afforded by

the proposed settlement is substantially narrower than it would be if the suits were to

be successfully litigated,' this is no bar to a class settlement because 'the public

interest may indeed be served by a voluntary settlement in which each side gives

ground in the interest of avoiding litigation.'" *Id.*

While Plaintiffs are confident in the strength of their claims, the risks to Class,

Collective, and PAGA Members of continued litigation were significant. The

Settlement here warrants preliminary approval because it provides immediate relief

to the Class, Collective, and PAGA Members while avoiding potentially years of

more complex litigation and appeals and the risk that comes along with it.

Medasource asserted 30 affirmative defenses, some of which could have precluded a

finding of liability outright. (Dkt. 34.) For example, Medasource asserts several

defenses suggesting that it provided Plaintiffs and all other similarly-situated Trainers

an opportunity to take a full, uninterrupted 30-minute meal break by the end of the

fifth hour of work each day as well as full, uninterrupted 10-minute rest breaks in the

middle of each work period and at the rate of a net 10 consecutive minutes for each

four hour work period. (*Id.* at 20.) Medasource further suggests that if Plaintiffs and

any other similarly-situated Trainers failed to take these meal and rest break

opportunities, they did so voluntarily, or they voluntarily took a 30-minute meal break

later in the day, and/or they voluntarily chose to combine their rest breaks with their

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

meal periods or they simply took their rest breaks prior to or after their meal breaks; thus, precluding any liability for these claims. (*Id.*) Plaintiffs put little stock in these arguments, but it could come down to a battle for the jury to decide at trial. As another example, Medasource asserts that Plaintiffs are not entitled to recover any civil penalties under PAGA because: (1) any such imposition of penalties would be unjust, arbitrary and oppressive, and/or confiscatory with California Labor Code section 2699(e); (2) it would be an unconstitutional denial of its rights to equal protection under both the U.S. Constitution and CA Constitution; and (3) it would violate the constitutionally based separation of powers doctrine. (*Id.*) Again, Plaintiffs are confident they'd defeat these arguments, but at bottom, the determination of complex factual and/or legal issues by the Court or jury is an inherently uncertain proposition, particularly compared with the certain relief offered by the Settlement.

Protracted litigation would also consume significant resources, including the time and cost associated with trial and any appeals. It is quite possible that a drawn-out, complex, and costly litigation process that would lie ahead if not for the Parties settling the matter could have provided Class, Collective, and PAGA Members with either no recovery or some recovery several years from now. "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation." *In re Nvidia Derivs. Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Class, Collective, and PAGA

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

Members while avoiding the need for further extensive and drawn-out litigation, preliminary approval is appropriate.

### iii.    The settlement provides for an effective distribution of proceeds.

The Settlement provides for an efficient and effective distribution of funds to Participating Class, Collective, and PAGA Members. An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 Newberg Class Actions § 13:53 (5th ed.). The proposed Settlement readily satisfies this factor by sending checks directly and automatically to all Participating Class, Collective, and PAGA Members., without a claim process. Medasource has an address for approximately every Class, Collective, and PAGA Member, and the Settlement Administrator will run those addresses against several databases to ensure the most up-to-date addresses as possible before sending Notice and mailing settlement payments. The Settlement Administrator will also include in the Notice mailing a stand-alone page that requests the recipient to correct his or her contact information (if necessary) in an e-mail to the Settlement Administrator (with a specific e-mail address). This distribution method is effective and supports approval.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

### iv.    The terms of the proposed award of attorneys' fees also support settlement approval.

Nothing about the negotiated attorneys' fee award should detract from the fairness of the Settlement. The Settlement's contemplated method of calculating attorneys' fees (*i.e.,* the percentage-of-the-fund method), and its limit on attorneys' fees (*i.e.,* no more than 25% of the non-reversionary Gross Settlement Amount) is reasonable and predicated on Plaintiffs' Counsel's work in the case as well as the outstanding relief provided for all Participating Class, Collective, and PAGA Members. It is also consistent with the typical range of attorneys' fee awards from a common fund recovery in the Ninth Circuit, with 25% considered to be the benchmark. *Powers*, 229 F. 3d at 1256. Despite the risks, substantial work, contingent nature, and the costs advanced by Plaintiffs' Counsel to bring this Action to a successful resolution, Plaintiffs' Counsel will detail further when they file their Rule 23(h) motion for attorneys' fees that the requested amount for both fees and out-of-pocket costs combined, is approximately ***four times less*** than their total lodestar alone.

### v.    The parties have no other agreements pertaining to the settlement.

This Court must also evaluate any agreement made in connection with the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the Settlement Agreement before the Court is the only extant agreement. Thus, this factor weighs in favor of preliminary approval.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

#### 4. The settlement treats all similarly-situated individuals equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Based on the Parties' assessment of exposure, risk, strength of claims, and Medasource's defenses, the Parties believe that allocation between the Participating Class, Collective, and PAGA Members, as discussed above, is fair and reasonable. The Parties proposed a fair method to distribute the settlement amounts based on the respective value of the claims, and no preferential treatment is being given to any Class, Collective, or PAGA Member, including the two Named Plaintiffs. All Class, Collective, and PAGA Members are entitled to the same relief calculated from the same respective formula. (Settlement Agreement, pp. 31–33, ¶¶ 1–3.) The only variation in recovery is based on the number of workweeks the respective Class or Collective Member worked, and the pay periods that each PAGA Member worked for Medasource in California. *See Altamirano v. Shaw Indu., Inc.,* 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). The same is true for the releases provided: all Participating Class, Collective, and PAGA Members (except for the two Named Plaintiffs who will sign a general release) will provide a release that is tailored to the claims that were raised or could have been raised based on the alleged facts pertaining to the respective group(s) to which they are a member. As a

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT

result, the Settlement treats all Participating Class, Collective, and PAGA Members equitably, further supporting approval of the Settlement.

Finally, while the Settlement Agreement provides for the Named Plaintiffs to seek a Service Award of up to $5,000 each for their participation in the Action, the extra payment is in recognition of the service they performed on behalf of all Class, Collective, and PAGA Members and the broader release of claims. *See Boyd v. Bank of Am. Corp.,* 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton,* 327 F.3d at 976-77).

For all these reasons, the proposed Settlement merits preliminary approval.

## V.    THE SETTLEMENT CLASSES MEET ALL OF THE REQUIREMENTS OF CONDITIONAL CERTIFICATION AND RULE 23

As stated herein, a prerequisite for the Court's preliminary approval of a class and collective action settlement is that the proposed classes meet the requirements of conditional certification under the FLSA and Rule 23, as applicable.

### A. Conditional Certification Under the FLSA Has Been Satisfied.

For employees that were allegedly denied wages, including overtime pay, the FLSA establishes an opt-in procedure. The FLSA was enacted for the purpose of protecting all covered workers from the inequities in the workplace that result from the differences in bargaining power between employers and employees. *See Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739 (1981). The goal of the FLSA was to ensure that each employee covered by the Act received "[a] fair

day's pay for a fair day's work and would be protected from the evil of overwork as

well as underpay." *Id*. at 739 (internal citation and quotations omitted). The FLSA,

therefore, provides that "[a]ny employer who violates the provisions of section 206

or 207 of this title shall be liable to the employee … affected in the amount of their

unpaid minimum wages, or their unpaid overtime compensation, as the case may

be...." 29 U.S.C. § 216(b).

In determining whether an FLSA collective action may proceed, the Ninth

Circuit in *Campbell* articulated a two-step approach. First, plaintiffs must move for

preliminary certification which involves disseminating notice to putative collective

members to advise them that "they must affirmatively opt in to participate in the

litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108-1109 (9th Cir.

2018). The dissemination of notice is "conditioned on a preliminary determination

that the collective as defined in the complaint satisfies the 'similarly situated'

requirement of section 216(b)." *Id.* at 1109. At this preliminary stage, the court

applies a "lenient" standard, "loosely akin to a plausibility standard, commensurate

with the state of the proceedings." *Id.* Second, "[t]he employer can move for

'decertification' of the collective action for failure to satisfy the 'similarly situated'

requirement in light of the evidence produced to that point." *Id.* As *Campbell*

explained, "[p]arty plaintiffs are similarly situated, and may proceed in a collective,

to the extent they share a similar issue of law and fact material to the disposition of

their FLSA claims." *Id.* at 1117. "If plaintiff makes a plausible showing that such a

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT**

similarity exists, the district court should grant first-stage certification." *Campanelli v. Image First Healthcare Laundry Specialists, Inc.,* 2018 WL 6727825, at *5 (N.D. Cal. Dec. 21, 2018).

The Named Plaintiffs and other Trainers here are "similarly situated" because they allegedly suffered from Medasource's same practices of failing to pay them all wages due, including allegedly by knowingly suffering and/or permitting them to work in excess of 40 hours in a week without properly compensating them at an overtime premium rate for all overtime hours. All Collective Members will automatically receive a settlement check, but only those Collective Members who actually cash their FLSA payment will be deemed to have consented under the FLSA to the Action (*i.e.,* opted in) and release their FLSA claims. (Settlement Agreement, pp. 14–16, ¶¶ 2, 5.) Since the Named Plaintiffs and other Trainers are "similarly situated," conditional certification of the FLSA collective should be granted.

## B. The Rule 23 Requirements Have Been Satisfied.

A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). The requirements for Rule 23(a) are: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Additionally, the court must confirm that the proposed form of notice to the class members is the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Consistent with the matter here, where workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.,* 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class certification is proper when the plaintiff provides substantial evidence of a company-wide policy or practice on which plaintiff's theory of liability is based, even if the implementation of the policy or practice varied. *See In re Taco Bell Wage & Hour Actions,* 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27, 2012). Rule 23's commonality requirement depends on whether the "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 359 (2011). However, the fact that class members may have been affected by the policy or practice to varying degrees is not a bar to certification. *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

### 1. Rule 23(a)(1) – Numerosity

Numerosity requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). No exact number is required, but courts typically find numerosity where the putative class contains 40 or more individuals. *In re Cooper Cos. Sec. Litig.,* 254 F.R.D 628, 634 (C.D. Cal. 2009).

Here, according to Medasource, there are 2,005 individuals in the combined class, collective, and representative matter falling well within the acceptable scope for numerosity. (Settlement Agreement, p. 10, ¶ 31; p.11, ¶ 33.)

### 2. *Rule 23(a)(2) – Commonality*

A plaintiff meets the commonality requirement for class certification if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "construed permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). The presence of one common issue whose resolution will impact all or a significant number of the putative class members suffices to satisfy this requirement. *Vizcaino v. U.S. Court for W. Dist. of Wash.,* 173 F.3d 713, 722 (9th Cir. 1999).

Named Plaintiffs allege Medasource's uniform practices and actions deprived Trainers of all compensation owed, including overtime compensation, and failed to comply with meal and rest breaks requirements, wage statements requirements, and the timely payment of wages upon separation of employment. The common proof applicable to the Class Members is based on Medasource's practices pertaining to its payment (or alleged lack thereof) of its Trainers, including overtime pay, meal period, and rest break practices. Therefore, the Class Members share the same common questions regarding the legality of Medasource's actions.

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

### 3. *Rule 23(a)(3) – Typicality*

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class" Fed. R. Civ. P. 23(a)(3). The representative plaintiff's claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. The claims though "need not be substantially identical." *Id.* Rather, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." *In re Paxil Litig.,* 212 F.R.D. 539, 549 (C.D. Cal. 2003).

Here, the typicality requirement is easily met. Named Plaintiffs allege that they and the Class Members suffered violations of their legal rights, including not being paid all wages owed, including overtime, not having compliant meal and rest breaks, not being provided accurate wage statements, not receiving payment for all wages owed and due, and more. The law applicable to those facts is the same for the Named Plaintiffs and the Class Members. The claims that the Named Plaintiffs are pursuing on behalf of the Class Members are based on the same legal theories and involve the same course of conduct that equally impacted all Class Members. Thus, the typicality requirement is satisfied.

### 4. *Rule 23(a)(4) – Adequacy*

The final Rule 23(a) requirement provides (1) that the representative plaintiffs do not have any conflicts of interest with the putative class; and (2) that plaintiffs are represented by qualified and competent counsel. *Staton*, 327 F.3d at 957. Here, the

Named Plaintiffs have adequately represented the Class Members throughout this litigation. There are no inter-class conflicts as the Named Plaintiffs and the Class Members share the same interest in holding Medasource accountable for the alleged violations pled in the FAC. Also, as noted above, Plaintiffs' Counsel are highly experienced in class and collective action litigation, particularly wage and hour matters, and have successfully handled complex class and collective actions in both state and federal courts across the country. (*See* Ficzko Decl., ¶ 6; Jones Decl., ¶ 5.) Therefore, the adequacy requirement is satisfied.

### 5.  Rule 23(b) – Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Hanlon*, 150 F.3d 1055. Under Rule 23(b)(3): (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class is superior to other available methods for fairly and efficiently adjudicating the controversy."

As alleged, Named Plaintiffs and Class Members' claims depend on whether Medasource paid its Trainers for all hours worked, overtime pay, and provided compliant meal and rest breaks. If liable, those potential violations trigger derivative claims including wage statement violations, waiting-time penalties, and potential PAGA violations. It is Plaintiffs' position that liability and damages can be resolved using the same evidence for all Class Members, and therefore this Action provides

the precise type of predominant questions that makes a class-wide adjudication worthwhile. *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016).

Superiority turns on "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. The main inquiry in determining superiority is whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996). Here, resolution of the issues through individual actions is impracticable as the recovery for each Class Member would be less, especially given the attorneys' fees and the costs that would be incurred by each individual member. Accordingly, the class device is the superior method of adjudicating the Class Members' claims.

### C. The Settlement of the Claim for PAGA Civil Penalties Is Fair and Reasonable.

Pursuant to the Settlement Agreement, $20,000.00 from the Gross Settlement Amount will be allocated to the resolution of the PAGA claim, of which 75% ($15,000.00) will be paid directly to the CA Labor and Workforce Development Agency and the remaining 25% ($5,000.00) will be distributed to the PAGA Members on a *pro rata* basis based on their Eligible Pay Periods. (Settlement Agreement, pp. 9–10, ¶ 29; p. 28, ¶ 3(d).) There are no articulated standards for determining whether PAGA civil penalties provided within a class action settlement are reasonable. *Ramirez v. Benito Valley Farms*, *LLC*, 2017 WL 3670794, at *3 (N.D.

Cal. Aug. 25, 2017). Instead, the Court "evaluates the PAGA settlement in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" *Id*. (citing Cal. Labor Code § 2699(e)(2)).

It is important to note that under PAGA, both underpaid wages and civil penalties are recoverable. Cal. Labor Code § 558(a). "Underpaid wages go[ ] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees." *Thurman v. Bayshore Transit Mgmt., Inc*., 203 Cal. App. 4th 1112, 1145 (2012). But it is not necessary for a settlement to allocate any funds towards PAGA civil penalties if the settlement benefits the aggrieved employees. See *Ramirez*, *supra*, 2017 WL 3670794, at *4 ("[C]lassifying the PAGA penalties in this case solely as underpaid wages is reasonable.").

The Settlement Agreement, nonetheless, provides $20,000 to be allocated as civil penalties; divided among the aggrieved employees and the State. (Settlement Agreement, pp. 9–10, ¶ 29; p. 28, ¶ 3(d).) This amount is similar to allocations that have been approved in other settlements. *See, e.g., Viceral, supra*, 2016 WL 5907869, at *8 (approving an allocation of $20,000 of a $6,000,000 settlement to the PAGA civil penalties); *In re Uber FCRA Litig*., 2017 WL 2806698, at *2 (N.D. Cal. June 29, 2017) (approving an allocation of $7,500 of a $7,500,000 settlement to the PAGA civil penalties). The PAGA payment provided by the proposed Settlement is

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

substantial and falls within the range of reasonableness for a case this size and should

be approved.

### D. The Proposed Notice Will Adequately Apprise the Class, Collective, and PAGA Member of Their Rights Under the Settlement.

The proposed Notice and claims administration procedures satisfy due process.

Rule 23(c)(2) of Federal Rules of Civil Procedure requires the Court to direct the

litigants to provide Class Members the "best notice practicable" under the

circumstances, including "individual notice to all members who can be identified

through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173 (1974).

Under Rule 23(c)(2), notice by mail provides such "individual notice to all

members." *Id.* Where the names and addresses of Class Members are easily

ascertainable, individual notice through mail constitutes the "best notice practicable."

*Id.* at 175.

The Notice here was jointly drafted and approved by the Parties and provides

Class and Collective Members with all required information so that each member

may make an informed decision regarding his or her participation in the Settlement.

The Notice provides information regarding the nature of the lawsuit; a summary of

the substance of the settlement terms; the class and collective definitions; the

deadlines by which Class Members must submit a request for exclusion or object; the

date for the Final Approval Hearing; the formula used to calculate settlement

payments; a statement that the Court has preliminarily approved the Settlement; a

statement that Class Members will release the settled claims unless they opt out; and a statement that Collective Members who cash their anticipated settlement checks will be deemed to have opted in to the Action and will release their FLSA claims. (*See* Exhibit A to the Settlement Agreement.) Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

The Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in the *Manual for Complex Litigation* noting "the notice should be accurate, objective, and understandable to Class Members … ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211. The Notice states that the Settlement does not constitute an admission of liability by Medasource, and that final approval has not yet been decided. The Notice therefore complies with the standards of fairness, completeness, and neutrality required of class settlement notices disseminated under authority of the Court. *See* Rule 23(c)(2) and (e); Manual §§ 8.21, 8.39, 30.211, 30.212.

The Settlement Administrator will mail and email (where available) the Notice to all Class, Collective, and PAGA Members. (Settlement Agreement, pp. 18–19, ¶ b(iv).) In the event a Notice is returned as undeliverable, the Settlement Administrator will attempt to locate a current address using, among other resources, the USPS national change of address database and normal skip tracing procedures to secure an updated address. (Settlement Agreement, p. 19, ¶ b(v).) Likewise, should

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**

any e-mail Notice be returned as undeliverable, the Settlement Administrator will undertake reasonable efforts to search for a correct e-mail address or other form of contact, and will also notify counsel for the Parties so that they can also search their records for a potential alternative e-mail address. (*Id*.)

Thus, because the Notice is neutral, written in easy-to-understand and clear language, and provides Class and Collective Members with (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class and Collective Members can exercise their rights, including the right to object to the Settlement or opt-out of the Settlement; (4) an explanation of how respective claims against Medasource that could have been litigated in this Action could or will be released; (5) a schedule of the names of counsel for the Class and Collective Members and information concerning attorney's fees and Service Awards; and (6) the date and time of the Final Fairness Hearing, along with an explanation of eligibility to appear, it satisfies due process and should be approved.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court to grant preliminary approval of the Settlement, conditionally certify the FLSA collective, conditionally certify the Settlement class, appoint the Named Plaintiffs as class representatives, appoint Plaintiffs' attorneys as Class Counsel, approve as to form the Notice, set a Final Approval Hearing, and enter the [Proposed] Order Granting

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS, COLLECTIVE, AND
REPRESENTATIVE SETTLEMENT

Plaintiffs' Unopposed Motion for Preliminary Approval of Class, Collective, and Representative Settlement, attached hereto as Exhibit 4.

Dated:        October 13, 2025        Respectfully submitted,

                                      STEPHAN ZOURAS, LLC

                                      By:  */s/ Andrew C. Ficzko*
                                           Andrew C. Ficzko

                                      *One of the Attorneys for Plaintiffs*

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE SETTLEMENT**